# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

DR. KURT MARIN, MAURICE SYMONETTE
CLYDE MCPHATTER, JAMES BUCKMAN
 and ALFRED DAVIS

Plaintiff(s),

Vs.

NORTH MIAMI BEACH POLICE DEPT.
FLORIDA POWER AND LIGHT CO.
NMB.BUILDING and ZONING DEPT and JPMORGAN CHASE
BANK FA., SHAPIRO FISHMAN & GACH'E LAW FIRM, ATTY. JULIE HERZLICH
ATTY.  EILEEN  E. NAVARRO,  JUDGE BARBARA ARECES

Defendant(s )

_____/

CASE:

15-cv-23915-Huck/Otazo-Reyes

COMPLAINT

FILED by _____ D.C.

OCT 2 0 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

1)Violation of civil rights act
 of 1964

2)  Damage to property
3) Grand theft of property
4) Violation of Bankruptcy
5) Respa and Tila Violations
6) No Contract
7) Fraud and Concealment
8) Quite Title
9) Declaratory and Injunctive
 Relief
10) Slander of Title
11) Intentional infliction of
 Emotional Distress.
12) Unjust Enrichment
13)Wrongful foreclosure
 14) Violation of Civ. Code
 15) Violation of the Statue of
 Limitations



**JURY TRIAL REQUESTED**

<u>INDEX</u>
INTRODUCTION
PARTIES AND JURISDITION
JURY TRIAL DEMAND
CLAIM OF RELIEF
BACKGROUND FACT
FIRST CAUSE OF ACTION-VIOLATION OF CIVIL RIGHTS ACT OF 1964 AND THE EQUAL
PROTECTION CLAUSE OF THE 14^(TH) AMENDMENT OF THE US CONSTITUTION IN A
CONSPRIACY TO KEEP BLACK PEOPLE OUT OF WHITE NEIGHBORHOODS.
SECOND CAUSE OF ACTION –DAMAGE TO PROPERTY
FOR FAILURE TO ATTACHE A COPY OF THE PROMISSORY NOTE AND IMPROPER
RE-ESTABLISHMENT OF LOST NOTE
THIRD CAUSE OF ACTION – GRAND THEFT OF PROPERTY
FOURTH CAUSE OF ACTION – VIOLATION OF BANKRUPTCY
FIFTH CAUSE OF ACTION – RESPA AND TILA VIOLATIONS
SIXTH CAUSE OF ACTION – NO CONTRACT
SEVENTH  CAUSE OF ACTION – FRAUD AND CONCEALMENT
EIGHTH CAUSE OF ACTION – QUIET TITLE
NINTH CAUSE OF ACTION – DECLARITORY AND INJUNCTIVE RELIEF
TENTH  CAUSE OF ACTION – SLANDER OF TITLE
ELEVENTH  CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
TWELTH CAUSE OF ACTION –  UNJUST ENRICHMENT
THIRTEENTH CAUSE OF ACTION – WRONGFUL FORECLOSURE, VACATE JUDGMENT
FOR FAILURE TO ATTACHE A COPY OF THE PROMISSORY NOTE AND IMPROPER
RE-ESTABLISHMENT OF LOST NOTE
FOURTEENTH CAUSE OF ACTION – VIOLATION OF CIVIL CODE
FIFTEENTH CAUSE OF ACTION  -- VIOLATION OF THE STATUTE OF LIMITATIONS

PRAYER

PLAINTIFFS EXHIBITS

2

## INTRODUCTION

This is absolute hatred of **BLACK** People and **DISCRIMINATION** and hopeless sea of And white Gentiles

unrighteous lawyers and county Judges. We must unify all blacks and whites & the police who are

the 2 true brethren Shem (blackman) & Japheth (white Gentiles), God Yahweh gave the promise

that Shem & Japheth that they would dwell in the same tent (heaven on earth) together in unity

so that Japheth must be saved with Shem Genesis 9:27 to help rebuild the economy, see exb. A1

The Federal Court is our last hope for justice. www.gods2.com.   THE BIBLE IN NEHEMIAH 5:1-8

the people mourned because MORTGAGES ENSLAVED THE PEOPLE. "The subprime debacle, which

I would define as loans That shouldn't have Been made and packaged that originated between

2000 and 2007, Is the biggest Ponzi scheme in the in the history of mankind." Spencer P. Scheer,

Esq., opening speaker "the Subprime Mortgage Fallout, "State Bar of California 29th Annual Real

Property Law Section Retreat, April 30th 2010. During The subprime meltdown, banks abandoned

Traditional underwriting practices and caused a frenzy of real estate speculation by issuing

Predatory loans that ultimately lowered property values in the United States by 30-50%.  Banks

reaped an unprecedented harvest. Kerry Killinger, CEO of Washington Mutual, took Home More

than 100 million during the seven years that he steered WAMU into Bankruptcy. Banks issued

millions of predatory loans knowing that the borrowers would default and lose their homes and

then committed perjury and fraud to Fabricate documents in the foreclosure Process. As a direct,

foreseeable, proximate result, 15 million families are now in danger of Foreclosure and plaintiff

3

DR. KURT MARIN, MAURICE SYMONETTE,  ALFRED DAVIS, JAMES BUCKMAN AND  CLYDE McPHATTER  is facing illegal foreclosure of their home,  The loan Application submitted to WAMU is attached as **exhibit  A.,** it consists of His name and address.

## PARTIES AND JURISDICTION

1). Plaintiff Kurt Marin is a resident of Florida and owner of a single family Residence located at 3320 NE 165TH ST. MIAMI FL. 33160 (the property) Acquired By Warranty Deed on Sept. 26, 2006. the legal Description is: Eastern Shores 1 Addn PB 65-39 Lot 8 BLK 6 lot size irregular or  20413 4142 05 2002 1 coc 25872-3682 08 2007 4 or 28094-4012-0809-11  Parcel Identification Number: 07-2210-001-0080, In the City of Miami, the County of Miami Dade, the State of Florida.

2). Defendant  Chase Bank has operations in Miami Dade County, Florida and other States. L Defendant Chase Bank ("Chase") A New York Corporation licensed to do Business in Florida, is in an Acquirer Of certain assets and liabilities of WAMU from the Federal Deposit Insurance Corporation Q`2 ("FDIC") acting as receiver and Chase claims to be the NOTE holder, beneficiary or Servicer for Investment trust of a loan which is the Subject of this complaint.

3).  Defendant North Miami Beach Police Department is located at: 16901 N.E. 19th Ave. North Miami  Beach Fl. 33162.

4).  Plaintiff Dr. Kurt Marin is a resident of Miami Dade County Florida.

5).  Plaintiff Clyde McPhatter is a resident of Miami Dade County Florida.

6).  Plaintiff Maurice Symonette is a resident of Miami Dade County Florida.

A).  Plaintiff Alfred Davis is a resident of Miami Dade County Florida.

B).  Plaintiff  James Buckman is a resident of Miami Dade County Florida

C).  Defendant Florida Power and Light (FPL) is within Miami-Dade County Florida.

D).  Defendant North Miami Beach Building and Zoning Dept. is located at 17050 N.E. 19th

Ave. North Miami Beach Fl. 33162 and is a Governmental Organization.

7).  Defendant  CHASE BANK, NATIONAL ASSOCIATION, ("CHASE") a   New York Corporation

licensed to do business in Florida named as trustee on a Mortgage Note or substitution of Trustee

describing the property admittedly signed by "A ROBO Signer, as a Vice President, of JP Morgan

Bank, National Association Successor in interest to Washington Mutual Bank, FA. It was recorded

in Broward County on Sept. 26, 2006. The Notary Public Who Acknowledged the ROBO signer's

signature under penalty of perjury was Another admitted ROBO signer. . Plaintiff is Informed and

Believes that signer is a ROBO-signer and that her Signature on the Mortgage or Substitution of

Trustee is a Forgery" Florida Attorney General stops ROBO signing in Florida and gets a 25 Billion

dollar settlement from Chase Bank  and 4 other Banks for ROBO signing and other Bank Fraud

cases. We the Plaintiffs demand that the Docs. be turned over to us and examined for fraud like

The settlement declared now must happen because Chase Bank admits they illegally Foreclose

and ROBO signed, but they are too big to JAIL. See: Dept. of Justice/Office Of Public Affairs article

02/09/12 and www.NationalMortgageSettlement.com and www.Justice.gov.

8). Defendants Does 1-150, inclusive, are sued under fictitious names. When their True  Names and

capacities are known, Plaintiff will amend this complaint and Insert their Names and capacities.

Plaintiff is informed and believes and their on Alleges that each of These Fictitiously named

defendants claims some right, title, Estate, lien, or interest in the Residence Adverse to Plaintiffs

title and their claims Constitute a cloud on Plaintiffs title to the Property. Or participated in

unlawful or fraudulent acts that resulted in injury to Plaintiff's Persons or Property.

5

9). There is diversity of citizenship between plaintiff and defendant  Chase Bank  and the Matter in controversy exceeds, exclusive of interest and cost, the sum of $75,000. This court has jurisdiction of this action pursuant to 28 U.S.C. 1332(a). This court has jurisdiction over the Subject matter of this complaint under 28 U.S.C.  1331 and 1337 because it involves a Federal question regarding interpretation and Proper application of the real estate Settlement Procedures  Act, 12 USC 2601 et seq.

## JURY TRIAL DEMAND

10). PLAINTIFF requests a jury trial on all issues.

## CLAIM FOR RELIEF

11). Plaintiff Brings this action against  Chase Bank, NA ("Chase"), and Does 1- 88 for selling Plaintiffs property At a Foreclosure sale to  and seeking to evict us at a hearing Oct. 14 2015 to Deprive plaintiff of his Residence without any lawful claim to the property and for using **RACISM** and **DISCRIMINATION** by Chase Bank lying to the Police saying we are not allowed in the house and evicted us out of the house without a Court Order, before it was foreclosed on and while we were in Bankruptcy because we are ***BLACK***.

## BACKGROUND FACTS

12). Plaintiff is the title holder of the property according to the terms of the Deed dated

July 14, 2006.  Plaintiff financed purchase of the property in 2006. Plaintiffs loan

application was submitted to Washington Mutual Bank ("WAMU") in July  2006.  A copy of

Plaintiffs Uniform Residential Loan Application, furnished to him by WAMU with instructions

to leave almost all of the items blank, is attached hereto marked "**exhibit A".**

13). And after Dr. Kurt Marin signed, WAMU then sells the NOTE to Washington Mutual Securities

(WMS) Who sales the unendorsed NOTE who like MERS packages the NOTE in a bundle of 5000

other NOTES and sales the unendorsed NOTES on the market many times,  A wammy, WAMU files

Bankruptcy then the FDIC sales WAMU assets to Chase Bank who continues to foreclose on a

NOTE that  was unendorsed and sold many  times on the market without being endorsed. And

then in 2007 WAMU failed, then the FDIC sold WAMU's assets to Chase Bank which did not

include Dr. Kurt Marin's Note because, the NOTE was already sold. Therefore When Chase bank

began to Foreclose on the subject property they knew they were Foreclosing on NOTES on

WAMU's books they had already sold, not on  WAMU's  Actual assets, they can't foreclose on

NOTES they don't own, that's Like trying to  Cash a  check (Promissory NOTE) and it's not signed

over to you or worse it's Already  CASHED (sold).

14). Then Chase bank used discrimination and racism with the excuse of keeping Blacks out of a

White neighborhood to illegally evict us because we are **NIGGERS** who will take the  property

value down.

15). Three days before the racist incident, Barry Gamel a realtor who claimed he worked with JPM

drove by 3320 N.E. 165th St. my house, and said to Maurice, Al, Clyde and James "you Niggers are

an insult, NIGGERS bring down the property value, your making it hard for us to sell property here"

Gamel also said "your bank has foreclosed on you and I'm going to get you NIGGERS out, because NIGGERS bring the property value down."

16). Then on or about 01/27/11 Barry Gamel was out watching as representatives of the City of Miami Zoning Department accompanied by 11 police officers with rifles and guns out, bullet proof vest on, rammed our front door at 3320 N.E. 165th St. N. Miami Beach FL. 33160 after police hit the door which Maurice opened and police pointed guns at Maurice saying get on the ground, went in the house and the yacht without a warrant, got the yacht workers out through the house and out of the house ordered them down on the ground handcuffed them checked some of our ID's without any probable cause, while Gamel laughed with zoning person Gill Rosenkauf and High Fiving police while neighbors watched. I asked the police sergeant why, he said the bank has foreclosed on this house and he said we are not supposed to be in the house with owner Clyde McPhatter, Maurice Symonette said the house is in bankruptcy, never foreclosed, **see exb. B** no Judge ordered eviction and only a Sheriff not a regular police can evict. Then the sergeant said we'll talk to the Building Department person Gill Rosenkauf who we saw talking to Barry Gamel before police raided the house.

17). Rosenkauf informed Plaintiffs that we had to vacate the premise because the house was a danger and uninhabitable since Plaintiffs did not receive city water. Plaintiffs home was using well water, like other homes in the community.

18). Rosenkauf ordered Plaintiffs to vacate the property without probable cause. After asking for the City Hall rule in writing, Rosenkauf stated Chapter 8, Section 5 on the back of his city planning business card. He then posted a red notice on the door to condemn   the property **(see exhibit C.)**

19). The police searched the residence and ordered all the occupants to leave the home. The Police then locked the doors. Plaintiffs were forced to leave their Vehicles and walk on foot.

20). The next day, Gamel was seen at the residence with another JPM realtor. They were changing the locks on the doors. Another Chase Bank person was seen removing property from the residence loading it on the Chase Bank Realtor's truck.

21). Plaintiffs approached the Chase Bank Rep. and inquired as to where they were going with Plaintiffs property. They said they were instructed to remove the property by  Chase Bank. They showed documents that showed the banks name.  Maurice Symonette asked him for his card.  He said hold on a second and went to the truck to get another card, because something was written on his card.  He jumped into the truck and sped off.

22). Defendants stole over $600,000.00 of equipment. The next day after the locks were changed Florida Power and Light (FPL) was observed turning off the power at the residence. Their reason was that the North Miami Beach Zoning department ordered FPL to cut the power to the because the house was a "grow house" for Marijuana, an illegally controlled substance. When Plaintiffs went to the police department to complain about them calling our house a marijuana grow house the police were embarrassed and said after we have been evicted out of our house for 3 days that

9

we were allowed to go back in because there was no eviction and no Judges order and they were appalled because they (police) searched the whole house the day of the incident and saw no marijuana, just beautiful furniture.  And so therefore we are not going to allow the Zoning department to take your house.  And while protesting with the help of Tea Party, the police chief said we should sue Miami Beach.  Now the Zoning department and police  chief no longer work with the City of North Miami Beach.


23). **Plaintiffs did not grow marijuana at the premises and no evidence was discovered to counter this allegation.** The removal of electricity, which caused the generator in our yacht to stop pumping out water from the boat. The 74 foot 4 story yacht sank and was a total loss. The dock was also damaged while police kept Plaintiffs away from the premises.  See YouTube Symonette Palace bad3.

24). Defendants committed an illegal self-help eviction. The actions of the Defendants caused great harm and stress, see affidavits from tenants, **exhibits A2,A3, and A4.**

25). On or about July 23, 2010 Plaintiffs son Jerimiah Parham who lived in the house was brought up on false charges for firing a firearm while defending his home from intruders at 3320 N.E. 165th St. Miami Fl. 33160 all in an effort to get us Black people out of this White neighborhood.

26). Plaintiff and his son were arrested because of the incident. Was racially motivated and prejudicial in violation of fourteenth amendment that preserves the rights of a defendant in state court. States the following: because they don't want Blacks in their white neighborhood.

28). On or about July 25th 2012 detectives led by Detective Catlin searched our house

And Plaintiffs bedroom without a search warrant. While pretending to search Alfred Davis room to

further harass us and to force us out of the white neighborhood on July 26th 2012 and they were

obviously looking for money to take and detective said to Alfred Davis where is your money with

witnesses see **(exhibit D&D1.)** all in quest to steal and run black people out of the white

neighborhood.


29). Detective Catlin in furtherance of the conspiracy to run Blacks out of the neighborhood July

24<sup>th</sup>2012 stopped Alfred Davis, Jovan Salamond and Clarence Glover and without a search

Warrant or permission searched the car and found nothing. Then went into the Black peoples

check cashing store blocked the store off all night without probable cause claiming to be waiting

on a search warrant and then without a search warrant being issued at 9am went into that store,

stole the computers out of both businesses even the business that was not being watched, this all

started at 9:00am that  morning  and was witnessed by other people see **(exhibits of affidavits**

**#bb1, #bb2, #bb3, #bb4, #bb5, and #bb6),** all done before the search warrant was given by the

judge 12:pm see **(exhibit #bc).** On October 25<sup>t h</sup> Detective Catlin went to Clarence Glovers females

friend house knocked on the door and illegally searched without  a warrant her house and

searched a white truck not owned by Glover and took the truck without a warrant or probable

cause. We believe the truck has been sold and we want an inquiry on the where-a-bouts of the

vehicle. Detective Catlin arrested Glover that October 25th 2012 night and charged him with

driving while his license was suspended but the charge was  for July 25<sup>th</sup>2012 four months after

the July 25th stopping of Glover by Detective Catlin but Detective  Catlin reported to Glovers

probation officer that he was arrested for driving while his license was suspended knowing that

Glover was never stopped while driving.  Glover was in the lady's house for a good period of time

before he was arrested in the house the arrest affidavit said July 25th of which that charge was

dismissed because it was four months later and witnesses say Glover wasn't driving **see (exhibit**

**E&E1).** Glover had spent four months in jail as a result of Detective Catlin's lies and money and car

thieving racisum in his quest to run us out of the white neighborhood and hid  the fact that he is

stealing black people's money and cars and property. Feb 11, 2013 Detective Catlin and his gang of

Detectives stopped Alfred Davis and other people that were in the car for NO Reason, pointed AR

15 MACHINE GUNS AT THEIR HEADS and ordered them out of the car. They searched the car

without a warrant and without permission and found nothing , see affidavits of other riders

That were in the vehicle on **exhibits #F1, & #F2**


30). Detective Catlin jumped in the car and drove the car away and left them standing on the side

of the road and gave them no traffic ticket. I Maurice picked up the Alfred we drove to the Police

station and asked to speak to their sergeant.  Eight fully armed Detectives came out with the

sergeant and detective Catlin said to me the reason he took the car was that he  saw from the

information which is impossible and a lie that a leasing Company  rented the car from BMW and

illegally rented it to Alfred Davis but our problem is  he's lying because the car was bought from

BMW by the leasing company and loaned out to Alfred Davis which is not illegal, so therefore they

stole the car at gun point because black  people are not  allowed to drive nice cars and live in nice

homes. This is all in their quest to drive us out of their white neighborhood.

31). Plaintiff Kurt Marin has been named as Borrower on a Mortgage Deed describing property dated Sept. 26, 2006, Deed. Loan City FA is identified on the Deed as Lender and the beneficiary under this security agreement," Florida Title Company is Trustee. Plaintiff has not received notice that WAMU's beneficial interest has been transferred.

32). Plaintiff is informed and believes that WAMU securitized Plaintiffs single Family Residential Mortgage loan through Washington Mutual Mortgage Securities Corporation, Evidenced by references to a "private Investor" made by Chase Bank. 013. On foreclosure docs Defendant WAMU recorded a notice of *Lis Pendens* (NOLP) Describing the Property with instructions that the Plaintiff Contact Chase Bank, National association to stop the foreclosure. The NOLP was signed by Assistant Secretary, a "Declaration of Compliance (Fl. Statute 92.525 like Cal. Civil Code Section 2923.5(b)" attached to the NOLP Was Signed under penalty of perjury by Beth E. Melamed on behalf of Chase Bank National association, "The undersigned Mortgagee, Beneficiary or authorized agent." Washington Mutual is described as Beneficiary. Nowhere is Chases Role described in the Papers on which Chase asserts the right to sell the property except reference to Chase Bank as servicer on the Mortgage.

33). On or about Aug. 28. 2007 Defendant recorded a notice of foreclosure sale Stating that the property would be foreclosed on and sold at public auction. The NOLP included a declaration pursuant to Florida civil Code law bearing the Name of Ann Thorn, first Vice President of Chase Bank National Association. Chase Bank was identified as a servicer on the mortgage. Also they

acted out Racism and Discrimination to kick us Blacks out of a White Neighborhood also as an excuse to evict us illegally with the help of Racism even with the Judges  Example.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AND THE EQUALPROTECTIONCLAUSE OF THE 14TH AMENDMENT OF THE U.S. CONSTITUTION.   A CONSPIRACY TO KEEP BLACKS OUT OF WHITE NEIGHBORHOODS

Then Chase Bank used discrimination and racism with the excuse of keeping Blacks out of a White neighborhood to illegally evict us because Chase rep. mr. Gamel said  we are NIGGERS who will take the property value down.

97). Three days before the racist incident, Barry Gamel a realtor who claimed he worked with Chase Bank drove by 3320 N.E. 165th St. my house, and said to Maurice, Al, Clyde and James "you Niggers are an insult, NIGGERS bring down the property value, your making it hard for us to sell property here" Gamel also said "your bank has foreclosed on you and I'm going to get you NIGGERS out, because NIGGERS bring the property value down."

98). Then on or ab out 01/27/11 Barry Gamel was out watching as representatives of the City of Miami Zoning Department accompanied by 11 police officers with rifles and guns out, bullet proof vest on, rammed our front door at 3320 N.E. 165th St. N. Miami Beach FL. 33160 after police hit the door which Maurice opened and police pointed guns at Maurice saying get on the ground, went in the house and the yacht without a warrant, got the yacht workers out through the house and out of the house ordered them down on the ground handcuffed them checked some of our

ID's without any probable cause, while Gamel laughed with zoning person Gill Rosenkauf and High

Fiveing police while neighbors watched. I asked the police sergeant why, he said the bank has

foreclosed on this house and he said we are not supposed to be in the house with owner Clyde

McPhatter, Maurice Symonette said the house is in bankruptcy, see exb. ( b )    never foreclosed,

no Judge ordered eviction and only a Sheriff not a regular police can evict. Then the sergeant said

we'll talk to the Building Department person Gill Rosenkauf who we saw talking to Barry Gamel

before police raided the house.

99). Rosenkauf informed Plaintiffs that we had to vacate the premise because the house was a

danger and uninhabitable since Plaintiffs did not receive city water. Plaintiffs home was using well

water, like other homes in the community are already doing but no law has been brought up

Against people having well water but they are charging us a $250.00 fine every day for not using

City water **see exhibit # ( F )**

100). Rosenkauf ordered Plaintiffs to vacate the property without probable cause. After asking for

the City Hall rule in writing, Rosenkauf stated Chapter 8, Section 5 on the back of his city planning

business card. He then posted a red notice on the door to condemn   the property **(see exhibit C.)**

101). The police searched the residence and ordered all the occupants to leave the home. The

Police then locked the doors. Plaintiffs were forced to leave their Vehicles and walk on foot.

102). The next day, Gamel was seen at the residence with another Chase Bank realtor. They were changing the locks on the doors. Another Chase Bank person was seen removing property from the residence loading it on the Chase Bank Realtor's truck.

103). Plaintiffs approached the Chase Bank Rep. and inquired as to where they were going with Plaintiffs property. They said they were instructed to remove the property by  Chase <u>Bank. They</u> showed documents that showed the banks name.  Maurice Symonette asked him for his card.  He said hold on a second and went to the truck to get another card, because something was written on his card.  He jumped into the truck and sped off.

104). Defendants stole over $600,000.00 of equipment. The next day after the locks were changed Florida Power and Light (FPL) was observed turning off the power at the residence. Their reason was that the North Miami Beach Zoning department ordered FPL to cut the power to the because the house was a "grow house" for Marijuana, an illegally controlled substance. When Plaintiffs went to the police department to complain about them calling our house a marijuana grow house the police were embarrassed and said after we have been evicted out of our house for 3 days that we were allowed to go back in because there was no eviction and no Judges order and they were appalled because they (police) searched the whole house the day of the incident and saw no marijuana, just beautiful furniture.   And so therefore we are not going to allow the Zoning department to your house.  And while protesting with the help of Tea Party, the police chief said we should sue Miami Beach.  Now the Zoning department and police  chief no longer work with the City of North Miami Beach.

105). Plaintiffs did not grow marijuana at the premises and no evidence was discovered to counter this allegation. The removal of electricity, which caused the generator in our yacht to stop pumping out water from the boat. The 74 foot 4 story yacht sank and was a total loss. The dock was also damaged while police kept Plaintiffs away from the premises.   See YouTube SymonettePalace bad3.

106). Defendants committed an illegal self-help eviction. The actions of the Defendants caused great harm and stress.

107). On or about July 23, 2010 Plaintiffs son Jerimiah Parham who lived in the house was brought up on false charges for firing a firearm while defending his home from intruders at 3320 N.E. 165th St. Miami Fl. 33160 all in an effort to get us Black people out of this White neighborhood.

108). Plaintiff and his son were arrested because of the incident. Was racially motivated and prejudicial in violation of fourteenth amendment that preserves the rights of a defendant in state court. States the following: because they don't want Blacks in their white neighborhood.

109). A police hit the door which Maurice opened and police pointed guns at Maurice saying get on the ground, went in the house and the yacht without a warrant, got the yacht workers out through the house and out of the house ordered them down on the ground handcuffed them checked some of our ID's without any probable cause, while Gamel laughed with zoning person Gill Rosenkauf and High-Fiving police while neighbors watched. I asked the police sergeant why, he said the bank has foreclosed on this house and he said we are not supposed to be in the house with owner Clyde McPhatter, I said the house is in bankruptcy, never foreclosed, no Judge ordered eviction and only a Sheriff not a regular police can evict. Then the sergeant said we'll talk to the

Building Department person Gill Rosenkauf who we saw talking to Barry Gamel before police raided the house.

110). On or about July 25th 2012 detectives led by Detective Catlin searched our house And Plaintiffs bedroom without a search warrant. While pretending to search Alfred Davis room to further harass us and to force us out of the white neighborhood on July 26th 2012 and they were obviously looking for money to take and detective said to Alfred Davis where is your money with witnesses see (**exhibit D&D1.)** all in quest to steal and run black people out of the white neighborhood.

Maurice Symonette was driving his Mercedes Benze, in North Miami near Biscayne Blvd.  Police

111.)Officers  saw Maurice and recognized his face as he drove by them they then turned their Car around and made him pull over on a traffic stop, at the time of the stop the officer had no Objectively reasonable suspicion that Symonette was engaging in any criminal activity, after he Stopped the vehicle officer Marin ordered  Symonette out of the vehicle, in which he did,  officer Catlin searched the vehicle without Symonette's consent , officer Catlin entered the vehicle and Seized a fire arm that he had found in the glove compartment and he lied and said he found it on The Passenger seat underneath some paperwork, and I have 5, witnesses with affidavits that said They  Saw Detective Catlin take the gun from out of the glove compartment **see exb. #G1,G2,G3, G4 and G5** .  The Zoning Department is trying to run us out of town because of the water situation the Zoning Dept. They say It is illegal to have well water in our area **see exhibit# ( F )**   but there are people in this neighborhood that have well water and they also said that our gate was to high. They Acted out Racism and Discrimination to kick us Blacks out of a White Neighborhood also as

an Excuse To evict us illegally with the help of Racism even with the Judges  Example, as a result of

Said extreme and outrageous conduct by defendants and each of them, Plaintiffs has suffered

Severe emotional distress of $5,000,000.00.

WHEREFORE, Plaintiff's pray that this court grant compensatory and punitive damages against

Defendant's for their contribution to the conspiracy to illegally evict Plaintiffs and also they lied to

the police telling them we were evicted already to make us look like **BLACK DRUG DEALING**

**HOUSE SQUATTERS** and had Plaintiffs illegally house searched and evicted without a Judge's order.

WHEREFORE, Plaintiff's Pray that this court grant compensatory and punitive damages against

Defendants.

### SECOND CAUSE OF ACTION –  DAMAGE TO PROPERTY

The police illegally entered plaintiffs home without a search warrant kicked in our

doors, and ordering Florida Power and Light Company who knew better to wrongfully cut off

our power causing the YACHT to sink causing  thousands of dollars in damages.

### THIRD CAUSE OF ACTION- GRAND THEFT OF PROPERTY AND

### VIOLATION OF BANKRUPTCY STAY

114).  Chase Bank was caught stealing $700.000.00 in property and recording equipment out of

the house and changing locks to lock us out of our house with no court Order. We want our

property replaced or the money back tripled. And also in 8/6/2015 plaintiffs were arriving home

at their address again, at the 3320 NE 165thnst. to find that there house had been broken into by people from the bank (JPMorgan Chase Bank) they were still in the house, and the police was there with them also, they were changing the locks, see exhibit video 2b. on gods2.com of police and bank at house and said that they were from the Bank and were there to evict us, but we were still in Bankruptcy at the time and there they had taken some of the our property out, some from each room, and put a cover over the pool we showed them the Bankruptcy and told them we were not evicted yet, and they had already loaded some of our stuff in a truck that they drove to the house one of the owners of the house told them the bank they had to leave because the house was still under bankruptcy and they would be in a lot of trouble if they tried to take the house without a writ of possession or a sheirff then they left after being shown the bankruptcy and still had plaintiffs property on their truck full of our possessions and tools totaling in over $100,000.00.

**FOURTH CAUSE OF ACTION – 2nd VIOLATION OF BANKRUPTCY STAY**

113). Declaratory relief is authorized under 28 U.S.C. 2210 and The federal Jurisdiction is the violation of Federal Bankruptcy stay. Defendant Chase Bank Called police on Plaintiffs caused the police to Harass Plaintiff CLYDE McPHATTER at the house when asked why ,the police said that Chase Bank told police that we were evicted and now trespassing but, we had not been foreclosed on us yet nor ever evicted, all of this done while we were in Bankruptcy. **see exhibit**

**B.** And at another time on 6/26/2015 Clyde Mcphatter filed bankruptcy again,   and had to

appear in State Court to stop the sale on 7/1/2015 in front of Judge Barbara Areces , the Judge

Then runs over a legal Bankruptcy **see Exb. 22** and lies in Court on the record and on vidieo

saying that Clyde Mcphatter is not a part of this case knowingly understanding that Federal law

says that No matter how baseless a bankruptcy filing is only the bankrupktcy Judge can allow

for stay relief to allow the County Judge to proceed other than other than that Atty. Navarro as

an Officer of the court must stop a "Proceedings of the case, but Navarro continued illegally

Knowingly against federal law and lies saying no Judge ever allowed Clyde Mcphatter  to

intervene which was a lie because on **7/12/13** the clerk would not allow Clydes's  bankruptcy

To stop the sale. **see Exb.#O** docket Pg. 5 , so on that same date clyde had an emergency

Motion To intervene with his bankruptcy as owner of the house   and Dade Couny Judge

Gerrald D. Hubbart **on**  **7/16/13** Grants Clyde Mcphatter's bankruptcy motion to intervene

and stop the sale **see exhibit #23**   so therefore Atty. Navarro  said her coconspirator Sharpiro

Fishman Gach'e LLP Gave her specifics that Clyde is a non-Party on transcript**( exb. P) pg. 12 line**

**5-14**  And the sale was incorrectly stopped was her complaint, but Judge Hubbart allowed Clyde

to Stop the sale with his bankruptcy but they never appealed that order  so Clyde being interved

On this case stands then and now, but that's the lie ATTY. Navarro  says in front of Judge Barbara

Areces who as also as lawyer Knows better than to illegally run over a bankruptcy stay as an

officer of the court they did because we are helpless Pro-se people they just want us homeless

on the street all while Atty. Herztlich sat in quietly in back , see **transcript pg. 10-13 lines 14-**

**25 exhibit  P#**   see  Atty / judge Areces order after the big problem is Judge Areces looked

At the record and saw that the MCphatter bankruptcy was allowed by Judge Hubbart to stop

+the sale so Judge Areces Knew the bankruptcy was valid but went against the Federal Law

knowingly violated bankruptcy law seeing Bankruptcy on the docket Exhibit j. day before hearing

and handed the red stamped Bankruptcy to her and she read it see Transcript page **11 line 3**

**Exhibit P.** and see judge Areces signed illegal Order stealing the house from the Federal

Bankruptcy court and the Federal Trustee we signed to the  Feds. but of course the rules will

change in the middle of the game to their favor because rules and laws only work for them

When we walked out of the court room Atty. Navarro came out and Maurice Symonette said to

Atty. Navarro you know that the judge gave clyde Mcphatter the right to intervene with his

Bankruptcy and Atty. Navarro said  yeah I know but this judge is going to listen to me" and

Maurice said we must Sue you ma'am and she said "yeah well go for it" **see Affidavits of 3**

**witnesses Exhibit Q 1,Q2 &Q3.**

Clyde McPhatter, Maurice Symonette and Kurt Marin with motion for emergency hearing stay of

this Case to stop writ of possession because McPhatter was given the right to intervene because

he was an owner of the house and had always been on the case  by Judge HUBBERT and Judge

Arcese  said she didn't see where he stopped the foreclosure before and stop foreclosure

proceedings Judge with HUBERT's order and she ran over McPhatter's Bankruptcy and gave the

property to the Bank and at the Writ of Possession HEARING two weeks later after a hearing with

Judge Blake allowing Symonette to intervene  and Judge Hubert's order allowed owner Symonette

to to intervene for time to do a short sale but the BANK would not stop the Writ of Possession for

the Bankruptcy and then ARMY VET. James Buckman leaser of the home who started the lease

before Obama saving tenants act was expired and even if expired the tenants act states that

tenant gets ninenty 90 days but the Judge would not hear the tenants act motion and gave

Buckman an emergency hearing on Oct. 28. 2015 fourteen days after this Oct. 14th. 2015 Writ

hearing and then two days later on Oct. 16th 2015 the Sheriffs put a twenty four hour final notice

on the DOOR without us getting our hearings heard that was all filed days before the Writ hearing

along with Symonette's Bankruptcy filed Oct. 12th 2015 put in Dade County Clerks office  Oct. 13th.

2015 and the Writ hearing was Oct. 14th 2015 so therefore we won't get our emergency hearing

and time to move our stuff and we have an interlocutory appeal in and and a regular appeal in for

running over the Bankruptcy and an appeal about JPMorgan can't own this note through

Operation of law. on our property, on 10/12/15 Maurice filed for legal bankruptcy that should

stop the writ of possession but is  now under threat of the writ against our home emergency stay

of this writ is requested immediatey.


Then on 8/10/15, my house was broken into by JPMorgan Chase Bank , my front door had been

broken into, my swimming pool had been covered with wood, and three hundred thousand

dollars worth of studio equipment were taken out of the house. I know that we actually don't

have any rights or any hope for true justice. But in the K.J.V. of the BIBLE EXODUS 12:49 says one

law for all, Zachariah 11:5 says our oppressors destroy us and hold themselves not Guilty, isaiah

5:20 they call good evil and evil good, luke 11 :45-54 WOE=HELL to lawyers (except those

lawyers who repent, so don't defend them because you think you're already Doomed because

you are not, if you repent and do what's right and just). 2Tessolonians 2:1-11 but I am going to

at least reveal the son of perdition to the World and send them to Hell this I promise, that's why

I'm running for PRESIDENT of the USA see facebook maurice symonette and at the email

address .forpresidentmaurice@yahoo.com.www.agajobmarch.com.


## FIFTH CAUSE OF ACTION – RESPA  AND TILA VIOLATIONS


50). Plaintiffs re-allege and incorporates by reference the allegations contained in Paragraphs 1

through 29.

51). WAMU and its agents made material m isrepresentations and omissions with respect to the

terms of Plaintiffs loan in violation of the Truth In Lending Act (TILA). Plaintiffs is informed and

believes that WAMU concealed the terms of the loan with the intention of inducing Plaintiffs to

refrain from investigating and challenging the disclosures until the period for rescinding the loan

expired. Plaintiff did not receive any documents from WAMU after his meeting to sign documents

at a Florida Title Company, including disclosures required by the Truth in Lending Act. RESPA  and

a notice of right to cancel.

52). Plaintiff's loan is a mortgage loan subject to the provisions of RESPA, 12 U.S.C. 2605 et. seq.

and Cal. financial Code §50505.

53). On Oct. 12, 2010, Plaintiff requested a copy of his loan application and Promissory Note at a

Miami branch of  Chase Bank  in Florida. A bank Officer telephoned a Chase Bank office in Ohio

and informed Plaintiff that he would receive the loan documents in ten days. No documents have

ever been received.

54). Defendants have engaged in a practice of non-compliance with RESPA, including failing to

respond to properly submitted QWR's **see exhibit h-1&h2.** Plaintiff is informed and believes that

this practice is designed to conceal TILA and RESPA violations and to conceal the identity of the many investors who believe they are the owners of the NOTE WAMU got cash from and true beneficiary of the loan.

55). As a direct and proximate result of Defendants failure to comply with RESPA, Plaintiffs have suffered and continues to suffer actual damages in that he is unable to ascertain the basis for defendants claims to his property, he cannot identify the owner of the beneficiary of the Note, he cannot determine whether his payments to WAMU were paid to the beneficiary and there is no evidence upon which to conclude that Defendants are acting as NOTE owner with the lawful authority in their attempts to foreclose the property. Under RESPA, Plaintiffs seeks triple damages. They are also in **VIOLATION OF QUALIFIED WRITTEN REQUEST, FORMAL PROTEST, AND DISPUTE OF ALLEGED DEBT AND VALIDITY OF ALLEGED LOAN, we got this letter/Motion to JPM and we never got a response and was deprived of Due process of Discovery so that we could properly Defend or prosecute the case Exhibit h1&h2. and now in federal court we by lawrequest again to Chase Bank.**

**SIXTH CAUSE OF ACTION – NO CONTRACT**

56). Plaintiffs re-allege and incorporates by reference the allegations contained in Paragraphs 1

through 35.

57). Plaintiffs is informed and believes that WAMU routinely approved predatory real estate loans

to unqualified buyers in 2006 and 2007 and implemented unlawful lending practices by

encouraging brokers and loan officers to falsify borrower's income and assets to meet

underwriting guidelines when borrowers were not qualified.

58). Plaintiff followed WAMU's instructions when he submitted a uniform Residential Loan

Application **(exhibit. A)** to WAMU  that contained only his basic identifying information, such as

name, address, phone number, social security number, and bank account number. WAMU

employees filled out the application.

59). Plaintiff is informed and believes that WAMU had him, DR. KURT MARIN signed the Promissory

NOTE and took the NOTE to the Federal Reserve and illegally opened up an account in his name

without His permission using his SS# and other private info. without Him signing a 4506

Permission Federal Form to share your info. violating your Constitutional Right to Privacy, cashing

your Promissory NOTE like a check, using the USA Dept. of Treasury tax dollars to cash your NOTE

(Check) and fund your loan with his money, also constituting an illegal double closing using money

of credit not actual money of exchange Google Treasury **Expert Walker Todd on** MONIES or **see**

**exhibit I**. WAMU did not use their money they used Plaintiff's SS#, credit score, job and signed

promise to pay NOTE, to get Feds. to fund the loan with a ten percent return to them at fruition of

loan thereby enslaving you with money you unknowingly gave yourself. Then WAMU charges you

high interest on money they never gave. Plaintiffs is informed that WAMU immediately after he

signed the Note, transferred all of its Interest in the Note to an investment Bank that bundled

plaintiffs' Note with numerous other residential mortgages into Residential Mortgage Backed

Securities (RMBS) which were structured into synthetic collateralized debt obligations (CDOs) and

sold to investors.

60). Plaintiff is informed and believes that the portfolio of RMBS underlying the synthetic CDOs

were selected by a hedge fund with economic interest directly adverse to borrowers and investors,

and that the hedge fund and the investment bank intended to short the portfolio it helped to

select by entering into credit default swaps to buy protection against the almost certain event that

the Promissory Notes would default.  WAMU expected that Plaintiff would not have the ability to

repay the loan. It was not simply a matter of being unconcerned with the possible outcome that

Plaintiff would default: WAMU expected he would Default.

61). Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned

subsidiary of Washington Mutual Inc.  Securitization of Mortgage loans was a integral part of

Washington Mutual Bank Inc's. management of its capital.  It engaged in securitizations of first lien

single-family residential Mortgage Loans through Washington Mutual Mortgage Securities

Corporation, as depositor, beginning in 2001.  WAMU acted only as a servicer of Plaintiffs loan. as

proven in the case in Duval County FLORIDA  JPMorgan v. Pocopanni the judge  found that like in

our case which is exactly the same as our case that Atty. Shapiro Fishman and Gach did fraud

knowingly that WAMU sold the note and securitized the note days after the closing and according

to the GAA rules the note must be physically burned after securitization and never be used to

foreclose because the note is satisfied and yet JPMorgan was commiting fraud by trying to

foreclose without owning the note because the FDIC did not get any mortgage loan notes from

WAMU because they were sold and burned before the FDIC took over WAMU and FDIC rules says

that in order to accelerate on or foreclose on a note the Deed must be signed by the FDIC to

JPMorgan or any other entity. Only the FDIC can own the note by Operation of Law because the

FDIC is acting as if they are WAMU TO PROTECT THE INTEREST OF THE PEOPLE, like the Judge said

in Brevard County said that JPMorgan admitts that by operation of Law they can't and don't own

the note so JPMorgan can't own WAMU's notes so they can't Foreclose on our note. And that

exactly what they have done to us illegally

62). WAMU failed to disclose to Plaintiff that their economic interests were adverse to Plaintiff and

that  WAMU expected to profit when Plaintiff found it impossible to perform and default on his

mortgage.

63). A necessary element in the formation of an enforceable contract under   the common law is a

meeting of the minds. Two or more parties must share an expectation that a future event will

occur. Plaintiff expected that he would  borrow money from WAMU, he would pay it back, then he

would own the Property. WAMU expected that Plaintiff would borrow Money he would not be

able to pay it back, and then WAMU and/or the investors would own the property.  Since there

was no shared expectation no meeting of the minds no contract was formed between Plaintiff and

WAMU.

64). In addition to WAMU's expectation that Plaintiff would lose title to the property through

foreclosure, WAMU anticipated transferring the Note to investors immediately after Plaintiff

signed the NOTE. Plaintiff is informed and believes that WAMU purchased credit default insurance

so that WAMU would receive the balance on the note when Plaintiff defaulted, in addition to any

money WAMU received when it securitized the NOTE many many times over without endorsing

the NOTE. So WAMU got over paid twice, then also Forecloses, wow what a windfall!

65). Not only did WAMU dispense with conventional underwriting practices in 2006, it also paid premium fees and other incentives to mortgage brokers who signed up the riskiest borrowers. Fueled by spiraling profits to Chase Bank, WAMU and other bankers, common law principles of contract formation, customary Underwriting practices and statutory procedures for transferring interests in real property, including the recordation of transfers of interest in real property, disintegrated and the system collapsed.

66). WAMU expected that plaintiff would not perform as merely one victim in a  scheme in which WAMU's fees as servicer would be greater as the number  of loans increased;

- *WAMU's fees as servicer would be greater as the balances of loans increased;*

- WAMU would recover the unpaid balance of Plaintiff's loan through Credit

   Default Insurance when Plaintiff inevitably allegedly defaulted; and

- All risk of loss in the event of Plaintiffs' default would be borne by investors not WAMU as the servicer.

67). Plaintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void *ab initio*.

68). No enforceable contract was formed between Plaintiff and WAMU, and his Mortgage and Promissory NOTE were not assets of WAMU according to deposition of WAMU and  Chase Bank expert Lawrence Nardi saying "Schedule of loans purchased from WAMU does not exist"  (JP Morgan v. Waisome, Lake County Florida  Case 09 CA 005717, 05/09/12, Pg. 261 Line 2 of expert Nardi deposition) <u>exhibit #J.</u>  he states "there are no assignments of mortgage.  There's no

allonges.  There's no-- in the thousands of loans that I have come into contact with that were a part of this purchase, I've never once seen an assignment of mortgage.  There is simply not – they don't exist.  Or allonges, or anything transferring ownership from WAMU to Chase, in other words.  Specifically, endorsements.  He could not find where WAMU did not sell the loan immediately after the closing that could be acquired or assumed by  Chase Bank from the Federal Deposit Insurance Corporation (FDIC) as receiver after WAMU was closed by the Office of Thrift Supervision on September 25, 2008.  **exhibit # k.**

69). Chase Bank has no right to receive payment under Plaintiffs' Mortgage loan and has no right to foreclose on his property. Plaintiff does not seek rescission of the contract. He alleges that the contract was void *ab initio*.

## SEVENTH CAUSE OF ACTION - FRAUD AND CONCEALMENT

70). Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49.

71). WAMU concealed material facts from Plaintiff to consummate the loan, including:

    (A). WAMU did not follow conventional, sound underwriting practices;

    (B). Plaintiff would not be able to afford the payments required by his loan;

    (C). Plaintiff would not be able to refinance his loan; and

    (D). Plaintiffs' loan would be resold and securitized to third parties, rendering It impossible   for the lender to provide Plaintiff with a full re-conveyance upon completion of his payments on the NOTE.

72). Chase has concealed and continues to conceal from Plaintiff material facts in its possession which were requested during his visit to Chase Bank on October 12, 2010 that would enable him to ascertain whether his payments to WAMU were received by the owner or beneficiary of the NOTE.

73). As a direct and proximate result of Chases Bank fraudulent concealment Coursen v. JP Mortgage, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial. Plaintiff remains under the constant threat of a foreclosure sale of the property, which will happen **11/14/13** without any more notification to him, and in addition to damages caused by his emotional distress, he will suffer irreparable injury not compensable in damages if the property is sold.

On Feb. 24, 2014 Plaintiffs entered objection to sale into the Miami Dade County Court house To stop Defendant's motion to ratify Clerks sale and stop direct issuance of Certificate of Title, Dealing with issues of the Defendant not having the original note and that they are not the true owners of the Note. some Months later plaintiffs were at the same court house checking the files on the computer on this property on 7/14/2014 it was discovered that another motion had been put in the files by the Defendants titled " Motion to Ratify Clerks Sale and direct Issuance Of Certificate Of Title" another Objection To Sale had been entered also and was attached to those documents as but it was not the same objection to sale as what plaintiffs had entered in The files on 2/24/2014 that they were using claiming as an exhibit from us, JPMorgan attorney Julie Herzlich Had put in fraudulent copy of the "Objection to Sale" in the file, and it had the same

Filing date of 2/24/2014 as was the original copies of plaintiffs, they are not the real copies, the

real copies had items numbered from items 1 through 29, but the ones JPMorgan Chase Bank put

in the files were numbered 1 through 17 instead of the 29 as the plaintiffs had put in, JPMorgan's

document that they entered had the date Feb. 18, 2014 on their certificate of sale, but on the

original that plaintiffs put in had the date of Feb. 24, 2014, and JPMorgans copy on their

Certificate of service had a different font size for the word "M/S" on next to the last line

and they forged the signatures on those unauthorized copies, those copies were altered and

Tampered with, JPMorgan's attys. attempt to allow the Judge to appear to be tricked into not

into not having plaintiffs full objection to sale heard by changing the document and leaving out

lines 18-29 because this is what gave us our legal reasons to object to the sale. The documents

that JPMorgan Chase bank had put in are now being shown as an exhibit 24 on this case showing

the altered objection to sale, and the original objection to sale is exhibit 25.

**EIGHTH CAUSE OF ACTION QUIET TITLE**

74). Plaintiffs re-alleges and incorporates by reference the allegations contained in Paragraphs 1

through 53.

75). Plaintiffs seeks to quiet title against the claims of the Defendants and all persons claiming any

legal or equitable right, title, estate, lien, or adverse interest in the property as of the date the

complaint was filed (Fl. Statute 95.11=Cal Code Civil Procedure 760.020).

76). Plaintiffs is the title holder of the property according to the terms of a grant Deed Dated Sept.

14, 2006.

77). WAMU securitized plaintiff's single-family residential mortgage loan through Washington

Mutual Mortgage Securities Corp. Plaintiff is informed and believes that the unlawful beneficiary

has been paid in full. The mortgage states in paragraph 23, PG. 14, #Exb. L.: Re-conveyance upon

payment of all sums secured by this security instrument, lender shall request Trustee to re-convey

the property and shall surrender this security instrument and all Notes evidencing debt secured

this security Instrument to Trustee. Trustee shall re-convey the property without warranty to the

person or persons legally entitled to it . . .Mortgage does not state that Plaintiff must make full

payment, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to

WAMU under the mortgage were fulfilled and the loan was fully paid when WAMU received funds

in excess of the balance on the NOTE as Proceeds of sale through securitization(s) of the loan and

insurance proceeds from credit default swaps. We know that Washington Mutual Securities was

used to sell the NOTE in a bundle of 5000 other NOTES on the market unendorsed so as to be able

to sell it over and over again with each investor believing he owns the NOTE and to stop investors

from going after and collecting on the investment.  WAMU files bankruptcy which clears also

WAMU who used MERS to sell the NOTE, the same way Washington Mutual Security was used

and now they are both protected from the investors because WAMU is in Bankruptcy, They made docket tax free, money over and over on money WAMU never gave because the loan was funded by our tax dollars, from the USA Dept. of Treasury, using the Federal Reserve as the conduit account, WAMU illegally opened with Kurt Marin's info. and Promissory NOTE. Next the FDIC sells WAMU assets to JP Morgan that doesn't include DR. KURT MARIN NOTE that they already sold in fact the WAMU Chase bank  expert Lawrence Nardi operations unit manager and mortgage officer for WAMU and  Chase Bank says in deposition dated 08/21/12 see Washington Mutual Bank vs. Waisome, Florida 5th Judicial Circuit case no. 2009-CA-005717  starting on page 57, in the schedule of loans from WAMU through the FDIC sold to Chase Bank that there is no ownership of WAMU 2005-2007 NOTES to  Chase bank, no Assignments, no Alonge  Bank, therefore Chase Bank cannot foreclose on what they don't own. see **exhibit J.**

78). Defendants claims are adverse to Plaintiff because Plaintiff is informed and believes that none of the defendants is the holder of the promissory note, none of them can prove any interest in the note, and none of them can prove that the note is  secured by the mortgage, as well as for the reasons set forth in the proceeding causes of action. As Such, Defendants have no right, title, estate, lien, or interest in the property.

79).  Plaintiff therefore seeks a judicial declaration that the title to the subject Property is vested solely in plaintiff and that defendants and each of them be forever Enjoined from asserting any right, title, estate, lien, or interest in the property adverse To plaintiff.

## NINTH CAUSE OF ACTION-DECLARITORY & INJUNTIVE

## RELIEF

80). Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 59.

81). An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties. Plaintiff contends:

(a). That Chase Bank is not the present holder in due course or beneficiary of a promissory Note executed by Plaintiff. However, Defendants contend that Chase Bank is the present owner and beneficiary of a promissory Note executed by Plaintiff.

(b). That Defendants are not real parties in interest, do not have standing and are not entitled to accelerate the maturity of any secured obligation and see the property because they are not beneficiary or authorized agent of beneficiaries under the proported promissory NOTE. However Defendants assert that they are entitled to sell the property.

(c). That the Notice of *Lis Pendens* recorded in Miami Dade County on which purports to substitute defendant in place of WAMU through title Co. as Trustee under Warranty Deed dated 09/26/2006, was subscribed with a forged signature of a ROBO signer Vice President of Chase, and fraudulently acknowledge and therefore that Trustee is not a trustee Authorized to file a notice of *Lis Pendens* on the property. However, defendants contend that their admitted ROBO signer is a trustee duly authorized to file said notices.

82). Plaintiff desires a judicial determination of his rights and duties as to the validity of the promissory Note and mortgage, and Defendants rights to proceed with Foreclosure on the property. Unless restrained, Defendants will sell Plaintiff's residence, or Cause it to be sold, to

Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief.

83). Defendants wrongful conduct, unless and until restrained by order of this court, will cause great irreparable injury to Plaintiff as the value of the residence declines under threat of foreclosure and Plaintiff faces the prospect of eviction from his residence. Stay the foreclosure sale to examine the facts.

84). If the foreclosure sale is allowed to proceed, the burden on Plaintiffs significantly outweighs the benefit to Defendants, and each of them.

85). By contrast, if the foreclosure sale is enjoined, the burden to any or all Defendant's is minimal and not at all outweighed by the benefit to Plaintiff's.

86). Plaintiffs has no adequate remedy at law for the injuries currently being suffered and that are threatened. It will be impossible for Plaintiffs to determine the precise amount of damage that he will suffer if Defendant's conduct is not restrained and Plaintiff's must file a multiplicity of suits to obtain compensation for his injuries.


## TENTH CAUSE OF ACTION – SLANDER OF TITLE

87). Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66.

88).  The foreclosing Defendant's and each of them, by their acts and omissions, published matters which were untrue and disparaging  to Plaintiff's right to title in the subject property.

89). The afore mentioned publications by the foreclosing Defendants, and each of them, were unjustified and without privilege.

90). It reasonably foreseeable that the aforementioned publications by the foreclosing Defendant's, and each of them, cast doubt on Plaintiff's right to title in their property, which has caused and continues to cause damages to Plaintiffs.

91). As a result of said publications from defendant's, and each of them, Plaintiff's has suffered and continues to suffer loss of money, credit, real property value and reputation, in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92). Plaintiff's re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 74.

93). Plaintiff's contends that the acts and omissions of the defendants, and each of them, constitute extreme and outrageous conduct.

94). Plaintiff's further contends that defendant's and each of them, engaged in such conduct either intentionally or with reckless disregard as to the effect on Plaintiff.

95). As a result of said extreme and outrageous conduct by defendants and each of them, Plaintiffs has suffered severe emotional distress of $5,000,000.00.

96). WHEREFORE, Plaintiff's pray that this court grant compensatory and punitive damages against Defendant's for their contribution to the conspiracy to illegally evict Plaintiffs and also they lied to the police telling them we were evicted already to make us look like house squatters and had Plaintiffs illegally house searched and evicted without a Judge's order. WHEREFORE, Plaintiff's Pray that this court grant compensatory and punitive damages against Defendants.

## TWELTH CAUSE OF ACTION UNJUST ENRICHMENT

47). Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 26.

48).     Chase Bank has no interest in Plaintiff's Mortgage, so the pending foreclosure on Plaintiff's property would constitute unjust enrichment.

49). The mortgage states that all secured sums must be paid. Plaintiff alleges that the obligations under the mortgage were fulfilled when WAMU received funds in excess of the balance on the

50). NOTE as a result of proceeds of sale through securitization to private investors many times and insurance proceeds from credit default swaps.

## THIRTEENTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE, VACATE FORECOSURE
## JUDGEMENT FOR FAILURE TO ATTACH A COPY OF THE PROMISSORY NOTE AND
## IMPROPER RE-ESTABLISHMENT OF NOTE

34). 15 million families are now in danger of foreclosure, and plaintiff Dr. Kurt Marin has an

illegal foreclosure of his home at a foreclosure sale to be held Feb. 13, 2014

scheduled for the loan application he submitted to Washington Mutual, is attached as **exhibit  A,** it

consist of his name and address.  The Defendant seeked the re-establishment of a lost note, but

failed to attach a copy of the original note to the complaint in violation of Rule 1.130.

D e f e n d a n t  states in  the Complaint that it does not possess the note. Pursuant to Florida

Statute 673.3091: A person not in possession of an instrument is entitled to enforce the

instrument if: The person seeking to enforce the instrument was entitled to enforce  the

instrument when loss of possession occurred, or has directly or  indirectly acquired ownership of

the instrument from a person who was  entitled to enforce the instrument when loss of possession

occurred; and The loss of possession was not the result of a transfer by the person or  a lawful

seizure; (emphasis added). The note in this case was not lost as a result of transfers of the Note by

D e f e n d a n t 's predecessors in interest to subsequent parties, in violation of F.S.673.3091.

Pursuant to Form 1.944 of the Florida Rules of Civil Procedure: "Copies of the note and mortgage

must be attached." (to the Mortgage Foreclosure Complaint. (emphasis added). There is no proof

that Defendant ever held or took possession of the note

and thus cannot prosecute this foreclosure case. The Defendant has retained the

undersigned counsel to represent him in  this matter and has agreed to pay reasonable

attorney's fees and costs.

35). WAMU sold the Note to Washington Mutual Securities who then sold the note on the market

many times again like

MERS which is why we asked for the Original Note and proof of who sold and bought the Note

many times to ascertain who the true owners are.       Now because the Note was sold by WAMU

the same day of the closing and before WAMU failed,  the NOTE was not WAMU's NOTE therefore

after WAMU failed, the NOTE was gone and not bought by or given to Chase Bank from the FDIC.

**exhibit  M** ). The loan Plaintiffs is informed and believes that WAMU transferred all beneficial

interest in the loan to a private investor (Washington Mutual Securities a totally different entity

from WAMU).

36). Neither WAMU, or the Florida Title Co. GABRIEL MARTIN, P.A. ATTY. AT LAW, (GMPA),  Chase

Bank, nor anyone else has recorded a transfer of beneficial interest in the note property to  Chase

Bank.  Chase Bank is a beneficiary, the Florida Title Co. has breached its fiduciary duty to Plaintiff

under the Mortgage Deed Agreement, by not recording the alleged transfer of the beneficial

interest and/or servicing duty from WAMU to  Chase Bank and by not indicating on the notice of

default that  Chase Bank is the alleged beneficiary, in the Mortgage Deed it states:

37). Substitute Trustee Lender, at its option, may from time to time appoint a Successor Trustee to

any trustee appointed hereunder by an instrument shall contain the name of the original lender,

trustee and borrower, the book and Page where this security instrument is recorded and the

name and address of the successor trustee. Without conveyance of the property, the successor

Trustee shall succeed to all the title, Powers and duties conferred upon the Trustee herein and by

applicable law. The Procedure for substitution of trustee shall govern to the exclusion of all other **provisions for** substitution.

38). Chase Bank does not have standing to enforce the Note because, Chase Bank is not the holder of the NOTE and Chase Bank is not a beneficiary under the NOTE.   Chase Bank does not have the capacity to exercise a power of sale.   <u>Chase Bank does claim to be a holder of the Note or a</u> <u>Beneficiary.??</u> Chase Bank merely describes itself as a loan servicer in the notice of foreclosure. If Chase Bank can prove that it is a servicer, as it asserts without disclosing any document as proof, Chase Bank cannot foreclose on Plaintiff's property without joining the owner of the Note because Chase Bank is not a real Party in Interest, and cannot take note through operation of law as shown on <u>FDIC transfer papers exhibit. ( M ) see J.P. Morgan v.  Michigan Supreme Court.</u>

39).      Plaintiffs is informed and believes that Chase Bank does not have standing to sale Plaintiff's Property because it is not the holder of the Note.  Chase Bank did not pay any consideration to other Defendants evidenced by a Promissory Note and cannot produce a Promissory Note endorsed to Chase Bank.   Chase Bank does not own the Loan and cannot identify the owner of the loan because it's sold many times. Chase Bank did not purchase the loan when it took over WAMU in Sept. 2008, because WAMU sold Plaintiff's Note days after closing to Washington Mutual Securities among other reasons stated.  J.P. Morgan never finised buying the note when prosecuting foreclosure in 2008 J.P. MORGAN asked for an extension of the sales agreement until Aug, 2010 exb.( M ), to finish the sale. See mclean v. JP Morgan that states you cannot foreclose before owning the note.


**FOURTEENTH CAUSE OF ACTION  - VIOLATION OF FL. STATUTE 92.525 AND**

**CA. CIV CODE 2923.5**

40). Plaintiffs re-allege and incorporates by reference all the allegations contained in paragraphs 1 through 19.

41). Defendants commenced foreclosure of the property by recording a Notice of *Lis Pendens* in a Miami Dade county records office on June 1, 2007. **exhibit n.** Attached to the NOLP was a declaration of compliance with FL. Statute 92.525 Like Cal. Civil code 2923.5 signed under penalty of perjury by Beth E. Melamed Bar # 0136409 on behalf of Chase.

42). Plaintiff is informed and believes that declarant Beth E. Melamed did not have personal knowledge of the matters described in her declaration, which purported to describe attempts by Chase Bank contact Plaintiff as Required by Fl. Statute 92.525. The NOLP must include a Declaration from one of three entities showing that it contacted the borrower or tried with due diligence to contact the borrower.

43). On October 1, 2010, California Attorney General Jerry Brown sent a letter and ordered JP Morgan Chase to halt all foreclosures in California. A copy of The Letter is posted on the Atty. Generals Website at ag.ca.gov/news alerts. Mr. Brown wrote: the office of the Attorney General writes to demand that Chase Bank demonstrate immediately that it conducts foreclosures in compliance with California civil code, section 2923.5 or if it cannot, Halt all Foreclosures in California until it can Section 2923.5, subdivision (b) provides that a lender may not record a Notice of Default in California for a California Mortgage originated between Jan. 1, 2003 and Dec. 31, 2007, unless it can declare that it "has contacted the borrower, has tried with due diligence to

contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)." Chase Bank has now admitted that employee assigned to handling foreclosures signed Affidavits without first personally reviewing the contents of borrower's loan files, thus borrowers suffered the foreclosures of their homes based on Affidavits that Chase Bank had not confirmed to be accurate. This admission strongly Suggests that any purported verification by Chase Bank that it complied with section 2923.5 before commencing a foreclosure in California like Florida is similar suspect.

44). On October 8, 2010 the Attorney General called on all lenders in California to halt foreclosing on California homes until they can demonstrate that compliance with state law and posted a copy on the Attorney Generals Website.

45). In Florida the Atty. Got a 25 billion dollar settlement on this and bank and others for ROBO Signing fraud google $25 billion settlement on banks in Florida. Foreclosures have been suspended by state Attorney Generals in many States based on testimony of employees of Chase Bank Ally (GMAC), Bank Of America and other banks that Declarations and Affidavits were manufactured to commence foreclosures that were not based on the personal knowledge of the ROBO-signers whose name and signatures appeared on the Foreclosures documents without the declarant possessing any personal knowledge of the matters stated therein.

46). The declaration attached to the NOLP (**exhibit #n.**), does not meet the requirements of FL Statute 92.525 or Cal. Civil Code 2923.5 and so the foreclosure of the Plaintiffs property would be illegal under Florida and California law and must be enjoined.

## FIFTEENTH CAUSE OF ACTION  VIOLATION OF THE STATUTE OF LIMITATIONS

Also Maurice Symonette, moves to dismiss the foreclosure case in the Dade County Court and

stop the sale of the house according to Fl. Stature 95.011 (2) (c) for failure to complete

prosecution within the five year statute of limitation from when they filed their first lis pendens

to foreclose 06/04/07, about six years have passed and have not completed their foreclosure.

see docket exhibit (A) thereby surpassing the statute of limitation to foreclose see Elizabeth

Spencer  VS  EMC Mort. Corp. Appeals Court Case # 2002-30022-ca-01 Florida Statute 95.011 (2)

(c) says:  The 2012 Florida Statute: Title VIII  Chapter 95

Limitations of actions; Adverse Possession 95.11   Limitations other than for the recovery of real

property.  Actions other than for recovery of real property shall be commenced as follows:

> (1). within Twenty Years - an action on a judgment or decree of a court of record in this
>
> state.

> (2). within five years.

(a).  An action on a judgment or decree of any court, not of record, of this state or any court of

the United States, any other state or territory in the United States, or a foreign country.

(b).  A legal or equitable action on a contract, obligation, or liability founded on a written

instrument, except for an action to enforce a claim against a payment bond, which shall be

governed by the applicable provisions of paragraph (5)(e), S. 255.05 (10),s. 337.18(1), OR s.

713.23(1)(e)

(c).  An action to foreclose a mortgage.

## DEPRIVED OF DUE PROCESS

116). Also we were deprived of our Due Process by not allowing Plaintiff to present his case. see Coursen v. JP Morgan, case no: 812-12-cv-690-t-26EAJ US DIST. COURT TAMPA FL. Judge Richard A. Lazzara  says that Rule 12(b)(6) Dismissal, people must be afforded the opportunity to prove R5your allegations through discovery process. The Defendant WAMU never answered our Qualified Written Request and never showed ownership of the NOTE or the original NOTE as requested. **See exhibit  h1& h2** They then claimed that we should have defended ourselves thereby depriving us of our 14th amendment constitutional right to due process clause. So thereby we ask this Court to stop the sale of this house.


The statute is clear, at no fault of ours that in the BANKS quest to avoid having to prove that they own the Note, depending on the court to never make them follow the basic law of showing proof of owner ship, have gone past the Statute of Limitations in their quest avoid revealing their fraud on the court, that has been revealed through the Atty. Generals of Florida and others Chase Bank  admitted fraud on the people and the Courts and the Coursen  v. JP Morgan case and as a matter of LAW must be DISMISSED with PREJUDICE. Read 14th Amendment Equal protection Clause and the scripture Exodus 12:49 one LAW for all.

EMERGENCY HEARING   AQUIRED

Clyde McPhatter, Maurice Symonette and Kurt Marin with motion for emergency hearing stay of

this Case to stop writ of possession because McPhatter was given the right to intervene because

he was an owner of the house and had always been on the case  by Judge HUBBERT and Judge

Arcese  said she didn't see where he stopped the foreclosure before and stop foreclosure

proceedings Judge with HUBERT's order and she ran over McPhatter's Bankruptcy and gave the

property to the Bank and at the Writ of Possession HEARING two weeks later after a hearing with

Judge Blake allowing Symonette to intervene  and Judge Hubert's order allowed owner Symonette

to to intervene for time to do a short sale but the BANK would not stop the Writ of Possession for

the Bankruptcy and then ARMY VET. James Buckman leaser of the home who started the lease

before Obama saving tenants act was expired and even if expired the tenants act states that

tenant gets ninenty 90 days but the Judge would not hear the tenants act motion and gave

Buckman an emergency hearing on Oct. 28. 2015 fourteen days after this Oct. 14th. 2015 Writ

hearing and then two days later on Oct. 16th 2015 the Sheriffs put a twenty four hour final notice

on the DOOR without us getting our hearings heard that was all filed days before the Writ hearing

along with Symonette's Bankruptcy filed Oct. 12th 2015 put in Dade County Clerks office  Oct. 13th.

2015 and the Writ hearing was Oct. 14th 2015 so therefore we won't get our emergency hearing

and time to move our stuff and we have an interlocutory appeal in and and a regular appeal in for

running over the Bankruptcy and an appeal about JPMorgan can't own this note through

Operation of law. on our property, on 10/12/15 Maurice filed for legal bankruptcy that should

stop the writ of possession but is  now under threat of the writ against our home emergency stay

of this writ is requested immediatey.

Then on 8/10/15, my house was broken into by JPMorgan Chase Bank , my front door had been broken into, my swimming pool had been covered with wood, and three hundred thousand dollars worth of studio equipment were taken out of the house. I know that we actually don't have any rights or any hope for true justice. But in the K.J.V. of the BIBLE EXODUS 12:49 says one law for all, Zachariah 11:5 says our oppressors destroy us and hold themselves not Guilty, isaiah 5:20 they call good evil and evil good, luke 11 :45-54 WOE=HELL to lawyers (except those lawyers who repent, so don't defend them because you think you're already Doomed because you are not, if you repent and do what's right and just). 2Tessolonians 2:1-11 but I am going to at least reveal the son of perdition to the World and send them to Hell this I promise, that's why I'm running for PRESIDENT of the USA see facebook maurice symonette and at the email address .forpresidentmaurice@yahoo.com.www.agajobmarch.com.

**PRAYER**

WHEREFORE, Plaintiff requests judgment as follows:

1. That this court issue an Order to show Cause and after a hearing, issue a

   Temporary Restraining Order Preliminary Injunction restraining Defendant's, and each of them, during the pendency of this action, from continuing with their efforts to conduct  a Foreclosure Sale of the Property.

2. That the attempted foreclosure if the Property be declared illegal and that

   defendants be forever enjoined and restrained from selling the Property or

attempting to sell it or causing it to be sold, either under power of sale
pursuant to trust deed or by foreclosure action and from posting,

publishing or recording any notice of default of foreclosure sale contrary to state

or federal law.

3. That the underlying loan transaction be declared void as a result of

Defendant's Chase Bank and WAMU's misrepresentations, fraud, concealment and

predatory loan practices.

4. That Defendant's make restitution to Plaintiff according to proof.

5. For a judgment determining that Plaintiff is the owner in fee simple of the
Property against the adverse claims of Defendants and that they have no
interest in the property adverse to Plaintiff's.

6. For damages in an amount of $5,000,000.00.

7. For cost of suit and reasonable attorney fees.

8. For any and all other and further relief that may be just in this matter.

## VERIFICATION

MAURICE SYMONETTE, DR. KURT MARIN, JAMES BUCKMAN. ALFRED DAVIS AND CLYDE
McPHATTER declares:

I am the Defendant in the above-entitled action. I have read the foregoing
Complaint and know it's contents. The same is true of my own knowledge, except as to those

matters that are alleged on information and belief, and as to those matters, I believe them to be

true. I declare under penalty of perjury that the foregoing is true and correct, and this

declaration was executed in Ft. Lauderdale, Florida.

HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SERVED   10/19/15

BY US MAIL TO:  Julie Herzlich, Esq. Fl. Bar#9459 of SHAPIRO, FISHMAN AND GACH'E, LLP

Attorneys for plaintiff, 2424 North Fed. Highway Ste. 360 Boca Raton, Fl. 33431.

MAURICE SYMONETTE        CLYDE MCPHATTER        DR. KURT MARIN    ALFRED DAVIS
3320 N.E. 165th St.         3320 N.E. 165th St.      3320 N.E. 165th St. 3320 N.E. 165TH St.
Miami, FL 33160           Miami, FL 33160         Miami, FL 33160    Miami, Fl, 33160

JAMES BUCKMAN
3320 N.E. 165TH ST.
Miami, Fl. 33160

49